J. I. CAHILL, Appellant, v. THOMAS McDOWELL, William Eastman, William E. Wade, Constituting the Board of County Commissioners of Grant County, North Dakota, Respondents.

(169 N. W. 499.)

**County seat — temporary location — county commissioners — permanent location — general election — preliminary expression of choice by voters — primary election.**

1. Section 3208 of the Compiled Laws of 1913, which provides for the temporary location of county seats by the county commissioners and for the permanent location at a general election, and chapter 101 of the Session Laws of 1917, which amends the above section by adding a proviso authorizing a preliminary expression of preference by the voters voting at a primary election, are held to be applicable to the location of the county seat of Grant county.

40 N. D.—40.

**Legislature — providing method for contesting result of primary election — result of such election — cannot be questioned in contest proceedings.**

2. The legislature having failed to provide a method for contesting the result of a primary election at which the voters are authorized to express a preference between the various towns contending for the county seat, the result of such an election cannot be questioned in a contest proceeding.

**Validity of election — contesting — place declared selected as county seat — application of law — primary election — preliminary expression of choice by voters — law does not apply.**

3. Section 1051 of the Compiled Laws of 1913, which provides for contesting the validity of an election as to the right of a place declared and selected as the county seat, is construed and held to be applicable to an election which determines the location of a county seat, but not to one which merely amounts to an expression of preference preliminary to a final vote and selection at a general election.

Opinion filed November 2, 1918.

Appeal from District Court, Grant county, *W. C. Crawford,* J. Affirmed.

*Nuchols & Kelsh,* for appellant.

The right of suffrage is not an inherent one, nor a necessary incident of citizenship, but is merely a privilege granted by the sovereign power, and subject to the restriction of the Federal Constitution. 15 Cyc. 280 and cases cited; 9 R. C. L. 1023 and cases cited.

The enlargement, by the legislature of constitutional requirements and qualifications of voters, as well as the abridgment of the same, is obnoxious to the Constitution. Wilson, The State, chap. 12; Everett, Address on History of Liberty; Gougar v. Timberlake, 148 Ind. 48; Minor v. Happersett, 21 Wall. 162; 15 Cyc. 281, 398 and cases cited; Coggeshall v. Des Moines, 138 Iowa, 137, 117 N. W. 309; Cooley, Const. Lim. 599; Merris v. Powell, 125 Ind. 281; People ex rel. v. Canaday, 73 N. C. 198; Election Comrs. v. Knight (Ind.) 117 N. E. 565; McCafferty v. Guyer, 59 Pa. 109; Coffin v. Election Comrs. 97 Mich. 188, 56 N. W. 567.

The law of this state provides for and fully authorizes contests like the one here involved. Comp. Laws, 1913, § 1046; Troat v. Morris (S. D.) 137 N. W. 554; Truelson v. Duluth (Minn.) 61 N. W. 911; State v. Gates (Minn.) 28 N. W. 927.

*Sullivan & Sullivan,* and *I. N. Ste.n,* for respondents.

An amendatory act takes effect only from the time of its passage and has no application to prior transactions, unless an intent to the contrary is expressed in the act or clearly implied from its provisions. The county seat of Grant county was fixed as by law provided at Carson, long before the enactment of such amendment. Comp. Laws 1913, 7937, subd. 18, § 7938, subd. 58; 26 Am. & Eng. Enc. Law, 2d. ed. 712 and cases therein cited.

There is no authority for this contest. The result of a preliminary vote by the electors at a primary election, merely expressing their choice of a county seat town, cannot be contested. It is not final, and does not permanently locate the county seat, but is merely expressive of a choice. 9 R. C. L. p. 1157, § 147; State v. Superior Ct. 14 Wash. 604, 33 L.R.A. 674; Comp. Laws 1913, § 881.

There is nothing in the act of the legislature which authorizes a contest of the result of a primary election to choose a temporary county seat.

A primary election is a special election, merely to place before the voters certain matters to be determined at the general election following. Lane v. Fern, 20 Haw. 290, Ann. Cas. 1913B, 155; Scown v. Czarnecki, 264 Ill. 305, L.R.A.1915B, 247, 106 N. E. 276; State ex rel. Gilson Co. v. Monahan, 7 Ann. Cas. 661 and note, 72 Kan. 492, 115 Am. St. Rep. 224, 84 Pac. 130.

BIRDZELL, J. This is an appeal from an order sustaining a demurrer to a notice of contest in which it was sought to question the validity of an election held under the authority of chapter 101, of the Session Laws of 1917. This act provides for an election to be held, in connection with the primary election, for the purpose of locating the county seat in counties where it has not previously been permanently located. The facts necessary to an understanding of the questions presented are as follows:

At the primary election held in June, 1918, the question of the location of the county seat of Grant county was voted upon and the votes were canvassed, showing the result to be as follows: In favor of the village of Elgin, 1,000 votes; in favor of the village of Carson, 785 votes; in favor of the village of Leith, 752 votes. The vote in favor

of the village of New Leipzig, which was also upon the ballot, is not material to this proceeding. In this election the women of the county were allowed to participate under the authority of chapter 254 of the Session Laws of 1917. It appears from the notice of contest that the number of women voting in favor of the village of Carson exceeded the number voting in favor of the village of Leith by 76 votes; so that, should the votes cast by the women be disregarded, the village of Leith would be second in the election returns and, under the provisions of chapter 101 of the Session Laws of 1917, would be entitled to a place upon the ballot at the general election to be held in November, 1918. Following the election a notice of contest was served under § 1046 of the Compiled Laws of 1913, the contestant relying for the authority to contest the election upon § 1051 of the Compiled Laws of 1913. The only questions arising upon this appeal are: First, the applicability of chapter 101 of the Session Laws of 1917, to the location of the county seat of Grant County, and second, the existence of authority for the contest proceedings.

Section 3208 of the Compiled Laws of 1913 authorizes the county commissioners of a newly organized county to fix temporarily the county seat, and it is therein provided that "such location shall remain the county seat until the first general election thereafter, when the qualified voters of such county are empowered to vote for and select the place of the county seat by ballot as provided by law." The legislature in 1917 amended the foregoing section by adding the following proviso: (Sess. Laws 1917, chap. 101), "Provided, however, that in counties where the county seat has not been permanently located, the question of location of such county seat may be voted on at any primary election upon a petition or petitions, each to be signed by at least 10 per cent of the qualified voters of such county, voting for the office of secretary of state at the last general election, stating the date of signing and the residence of each qualified voter, designating therein the proposed county seat, which said petition shall be filed with the county auditor at least thirty days prior to the holding of any primary election, and if more than two towns are contesting for the location of the county seat at such election, then the two towns receiving the highest vote at such . . . election, and these two towns only, shall be placed on the official ballot at the first following

general election. . . . " It is contended by the respondent that the foregoing amendment has no application to the location of the county seat in Grant county, this by reason of the fact that the county seat had been temporarily located at Carson, under § 3208 before it was amended, but we are of the opinion that the amendment clearly applies to the location of the county seat in any county where, previous to the adoption of the amendment, it had been only temporarily located. Such was the character of the location of the county seat at Carson previous to the adoption of the amendment.

Section 3208 of the Compiled Laws of 1913, as it originally stood and as amended, contains no express provision for the contesting of an election held thereunder. The section, however, in its arrangement in the Political Code is a part of chapter 42, which is entitled "Counties and County Officials," and in the same article it is provided in § 3210 that, "all elections under this article, where not otherwise provided, shall be conducted in the same manner as required by law for general elections. . . . " This refers only to the manner of conducting the election. The authority to contest elections for the location of county seats is found in § 1051, of the Compiled Laws of 1913, which provides that "in any county where there is a vote for the election or for the removing or changing of the county seat of such county, or changing the county lines thereof, any elector of such county on leave of the district court may contest the validity of such *election as to the right of the place declared and selected as the county seat.* . . . Such elector shall give notice in writing of such contest to the county commissioners or a majority of them, of the county in which such vote was taken, by serving a notice as provided in § 1046, within thirty days after the result of such vote is canvassed. Such notice shall specify the grounds of such contest, and shall be filed with the clerk of the district court within ten days after the service thereof upon the county commissioners as aforesaid, and such contest shall be tried and determined by the district court or by a jury as provided for in this article for the contest of county officers." Section 1046 of the Compiled Laws of 1913, providing for the notice of contest, is sufficiently broad to comprehend a contest by an elector to determine the validity of an election locating a county seat.

The principal question in this connection arises upon the interpreta-

tion of § 1051. Does this section authorize the contesting of a primary election at which the question of locating the county seat is voted upon and the preference of the voters expressed for different contesting towns, all of which is but preliminary to a final vote and the final location of the county seat? There can be no question but that at the time § 1051 was adopted the language referred only to elections at which the county seat would be definitely and finally selected. This is the language of the statute, and when it was adopted there was no means of obtaining an expression of preference by vote between two or more locations as a preliminary to a final and definite location. Does it follow, however, from the modification of the location statute, permitting the preliminary expression of preference, that it was intended to make applicable to this expression all of that portion of the article regulating election contests? In order to determine whether this was in the contemplation of the legislature, it is proper to examine the procedure which is provided in the article entitled "Contesting Elections" in order to determine the extent to which such a procedure would be appropriate and applicable. It is to be noticed that under § 1051 the notice of contest is to be served within thirty days; that there are ten days after the service in which to file it in the district court. Thereafter, the matter is to be tried by the district court or by a jury or it may be referred to a referee. After the final determination of the contest in the district court and after the service of the notice of the entry of final judgment, a party adversely affected by the judgment has sixty days within which to appeal therefrom (§ 1055), and after the appeal is perfected the respondent is entitled to ten days' notice of the hearing in the supreme court. It will be seen that the procedure above outlined with reference to contesting the result of elections makes allowance for a period of time aggregating more than three months and a half, without allowance for trial, all of which might elapse before the contest proceeding would be submitted to the supreme court on appeal. The legislature has allowed ample time for a full trial of all of the issues involved and for the deliberate preparation and presentation of the whole matter. An entirely different procedure, however, has been provided for primary elections in general. Section 881 of the Compiled Laws of 1913 gives any "candidate" desiring to contest the nomination of another candi-

date ten days after the completion of the canvass, within which to proceed by affidavit. An expeditious hearing is provided for, and, after the final determination of the contest in the district court, ten days are allowed for appealing to the supreme court and in the supreme court the matter may be brought on for a hearing at any time after five days' notice. Thus, it will be seen that, in providing for the contesting of the results of primary elections affecting candidates, the legislature has deemed it wise to create a much more expeditious procedure and one that is calculated to give to the litigants the benefit of a final determination upon review in the supreme court within a comparatively short time after the election is held. The election in question is a primary election and it is so obvious that the contest provision, § 881 of the primary election statute, does not cover that counsel for the contestant has not even attempted to avail himself of its provisions. It is likewise clear to us that the machinery for contesting general elections is so far inappropriate to such a primary election that we cannot hold the legislature adopted it by implication. A contest proceeding is statutory and the matters involved are only judicial to the extent the statute makes them so. 9 R. C. L. 1157. We are not called upon to express an opinion as to the existence or nonexistence of other remedies.

Appellant has called to our attention the cases of Treat v. Morris, 25 S. D. 615, 127 N. W. 554; State ex rel. Diepenbrock v. Gates, 35 Minn. 385, 28 N. W. 927, and Truelson v. Duluth, 60 Minn. 132, 61 N. W. 911, in which it was held that a general law prescribing a mode of contesting elections is applicable to general and special elections, and even to elections held to determine questions of policy, such as that of prohibition or license. The general provisions construed in the cases referred to are analogous to § 1046 of the Compiled Laws of North Dakota for 1913 and we do not question the propriety of giving a broad construction to a law of that character for the purpose of making the remedy provided available. But, it is one thing to construe such a statute as being applicable to an election at which a question is finally determined or an officer elected, and quite another thing to hold it applicable to a mere preliminary expression of preference in anticipation of a final expression at a later time. None of the cases referred to goes to that extent. For the reasons above given, we are

of the opinion that the legislature has failed to provide a method of contesting an election such as the one in question. From this it follows that the order appealed from must be affirmed. It is so ordered.

ROBINSON and GRACE, JJ., concur in the result.